# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LORETTA MARSHALL,

    Plaintiff,

v.                                                                         Case No: 8:20-cv-1835-CEH-SPF

WAL-MART STORES EAST, LP,

    Defendant.
_____/

## **ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 34), filed on October 18, 2021. In the motion, Defendant requests summary judgment be entered in Wal-Mart's favor because there is no record evidence that Wal-Mart created the condition causing Plaintiff to slip and fall and there is no evidence to show Wal-Mart knew or should have known of any substance on the floor where Plaintiff slipped. Plaintiff responded in opposition to the motion. Doc. 39. The Court heard oral argument on May 31, 2022. The Court, having considered the motion, the response, the parties' Stipulated Agreed Facts and being fully advised in the premises, will deny Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulation of Agreed Facts (Doc. 79) and the store surveillance video (Docs. 37, 44) from the date of the incident. For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

### A.  Stipulated Facts (Doc. 79)

This case arises out of a slip and fall incident that occurred at Wal-Mart's Neighborhood Market store in Tampa, Florida, on May 5, 2016. Doc. 79 ¶ 1. On that date, Plaintiff, Loretta Marshall ("Plaintiff" or "Marshall"), slipped and fell in a clear puddle of water in the middle of the aisle next to the egg cooler and women's restroom. *Id.* ¶ 2; Doc. 34-1 at 53:16–54:4 and 55:23–56:1. Although the area was free of obstructions, Marshall did not see the water before she slipped on it. Doc. 79 ¶ 3; Doc. 34-1 at 54:5–54:22 and 56:23–57:2. Marshall saw no trail of liquid leading back to the cooler from the location of her fall—she observed no water coming from any cooler, nor did she see a cooler leaking. Doc. 79 ¶ 4; Doc. 34-1 at 58:19–59:1 and 59:14–60:2. There were no other footprints, track marks, or shopping cart marks in the water. Doc. 79 ¶ 6; Doc. 34-1 at 71:3–23 and 72:8–11. Nor does Marshall know how long the water was on the floor before her incident—she does not know when the water was spilled on the floor. Doc. 79 ¶ 6; Doc. 34-1 at 70:23–71:2; 73:3–5; and 73:13–19. Additionally, she does not know of any similar slip-and-fall incidents at this Wal-Mart store. Doc. 79 ¶ 7; Doc. 34-1 at 75:24–76:7. Wal-Mart's CCTV system captured the incident and the moments leading to it. Doc. 79 ¶ 8; Doc. 37, CCTV Footage at 1:03:06. The video also shows Wal-Mart employees cleaning in the middle of the aisle after Marshall's incident. Doc. 79 ¶ 49; Doc. 37 at 01:09:15; 01:09:42; 01:10:14; 01:10:34; and 01:11:17.

### B.  Additional Testimony/Evidence

1.  *Deposition of Plaintiff* (Doc. 34-1)

Plaintiff testified that liquid on the floor caused her fall. Doc. 34-1 at 53. A female employee who kneeled down to Plaintiff after her fall told Plaintiff that the cooler was leaking. *Id.* Plaintiff described the Wal-Mart employee who kneeled beside her as a light-skinned African American, petite woman. *Id.* at 51. The woman told her that "the cooler is leaking. It's not working." *Id.* at 56, 62. After Plaintiff's fall, she noticed her arm and leg were wet. *Id.* at 57. The manager wiped up the liquid with a napkin. *Id.* She did not see a trail of liquid on the floor leading to any of the coolers. *Id.* at 60. The manager was wiping the floor up toward the coolers. *Id.* at 61. The Plaintiff testified the female employee identified the air cooler closest to the restroom, which is connected to the milk cooler, as the one that was leaking. *Id.* at 61–62.

    2.    *Deposition of Lisa Sims – Plaintiff's Sister* (Doc. 35-8)

Plaintiff's sister, Lisa Sims ("Sims"), was at Wal-Mart with Plaintiff on the date she fell. Doc. 35-8 at 11. Sims did not observe the Plaintiff fall, but she saw water on the floor, which she photographed, "coming from over by that cooler." *Id.* at 12, 16–17. Sims testified that a female Wal-Mart employee wearing a jean jacket told Sims the water was coming from the egg cooler, which had been leaking. *Id.* at 18. According to Sims, the Wal-Mart employee stated the cooler was broken. *Id.* at 17. Sims testified the water on the floor was clear. *Id.* at 20. When someone picked up Plaintiff's flip flop, it was wet on the bottom. *Id.* at 20. The assistant manager Jason wiped up water on the floor in front of Plaintiff. *Id.*

    3.    *Deposition of Marissa West – Former Wal-Mart Employee* (Doc. 35-13)

Marissa West ("West") worked for Wal-Mart from August 2015 until October 2019. Doc. 35-13 at 4. West was working on the date of the incident, but did not observe the Plaintiff's fall, nor does she recall the incident. However, West testified that the egg "cooler was always leaking." *Id.* at 5. She testified that it leaked "every time it rained," and then it would leak off and on.[2] *Id.* at 7. She has no independent recollection of whether it was leaking on May 15, 2016, the date Plaintiff fell. *Id.* at 8.

    4.    *Deposition of Jason Cooper – Wal-Mart Assistant Manager* (Doc. 35-7)

Jason Cooper ("Cooper") was the assistant manager on duty at the Wal-Mart store on the date Plaintiff fell. He had been employed with Wal-Mart since 1999, but on the date of the incident, it was only his second day as assistant manager at that Wal-Mart location. He had no independent recollection of the incident but identified himself in the video as the male employee kneeling next to Plaintiff after her fall.

Cooper testified that if there was a leak in a cooler, there would be an online record request to notify Wal-Mart facilities, and then they would contract with an outside company to come fix it. Doc. 35-7 at 11–13. He worked at that location five months and testified he does not recall any of the coolers leaking.

    5.    *Declaration of Anthony Xolot* (Doc. 34-2)

Anthony Xolot, operations manager for the Wal-Mart where Plaintiff fell, submitted a declaration stating he reviewed the maintenance records for the refrigerator case at issue, specifically Cooler MTC-2. Doc. 34-2. He reviewed records

---

[2] There is no evidence before the Court that it was raining on the date of Plaintiff's fall.

4

for the six months before the May 15, 2016 incident and three months after the incident. *Id.* ¶ 4. There is no history of any repairs to this cooler during that time frame related to leaks. *Id.* ¶ 5. The only repair request for this cooler during the time frame was made July 12, 2016 and related to an electrical and lighting issue. *Id.* ¶ 6.

    6.    *CCTV Footage of Plaintiff's Fall*

The Wal-Mart closed-circuit video footage ("video") from the day of Plaintiff's fall was filed with the Court. Docs. 37, 40, 44. The video, which shows a portion of the dairy cooler aisle, starts at 11:03 and concludes at 3:02 on May 15, 2016,[3] showing approximately two hours before the fall and two hours after the fall. The video captures Plaintiff's fall at approximately 1:03 on the video. Numerous shoppers and workers can be seen traversing the dairy aisle prior to and subsequent to Plaintiff's fall. No one falls in the dairy aisle in the two hours prior to or after the fall, nor is there any evidence that someone spilled liquid in the dairy aisle prior to Plaintiff's fall.

At 12:55, 12:57, and 1:00 on the video, Wal-Mart employees (wearing bright yellow Wal-Mart vests) can be seen walking the dairy aisle.[4] There is an entrance to a public restroom halfway down the dairy aisle on the right past the coolers. Plaintiff falls at approximately 1:03 on the video. A female African American Wal-Mart employee wearing a jean jacket can be seen, initially, at 1:06 at the bottom of the video entering the dairy aisle. She turns around, leaves, and returns at 1:07 with the assistant

---

[3] It is unknown to the Court if the time on the video matches the time of day of the incident, but the video spans an approximate 4-hour period of time on the date of the incident.
[4] Wal-Mart workers wearing yellow vests can be seen many more times prior to those times as well, but this was in the time period immediately preceding Plaintiff's fall.

manager. The woman in the jean jacket appears to be wearing a Wal-Mart name tag, but the name is not legible on the video. She is talking to other workers in the aisle and at times gesturing. The other workers are wearing yellow vests. She and the assistant manager are not wearing yellow vests.

At 1:08, the assistant manager wipes the ground next to the Plaintiff. At 1:09, the woman in the jean jacket and another employee in a yellow vest are pointing to an area in the middle of the aisle and showing the assistant manager, who hands her what appears to be a paper towel. The female employee in the jean jacket begins wiping the middle of the floor with the paper towel while standing up and using her shoe to push the towel around on the floor. She wipes the length of the floor from the bottom of the video up to the middle of the aisle (which corresponds with the top of the video) where Plaintiff is still lying on the floor from the fall. The woman in the jean jacket continues to wipe the floor for approximately two minutes using her foot to drag the paper towel across the floor. At 1:11, the woman in the jean jacket can be seen leaning down to wipe the floor next to the Plaintiff's upper body. For the next minute, the woman in the jean jacket, using the paper towel, crouches down and wipes various parts of the floor in the middle of the aisle and by Plaintiff. Thereafter, she can be seen throwing the paper towel away. The woman in the jean jacket continues to stand next to where the Plaintiff is lying on the floor even after the assistant manager walks away from the area for a period of time. The woman in the jean jacket moves away from the Plaintiff when EMS arrives around 1:13–1:14. A customer can be seen pointing to an area of the floor in the middle of the aisle at 1:14:45. The woman in the jean jacket can be

seen standing at the end of the aisle (bottom of the video) for a short period, and then again at 1:22 for a short period. At 1:27, EMS personnel lift Plaintiff onto a gurney.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by

relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III. DISCUSSION

This slip and fall action is before the Court pursuant to the Court's diversity jurisdiction. Doc. 1 ¶¶ 6–9, 18–30. Thus, the Court applies the substantive law of the forum state, Florida. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Florida, a cause of action based on negligence requires four elements: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) a causal connection between defendant's breach and plaintiff's injury; and (4) actual loss or damage. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). With respect to the duty element, "[a] possessor of premises to which the public is invited has a legal duty to ascertain that the premises are reasonably safe for invitees." *Skipper v. Barnes Supermarket*, 573 So. 2d 411, 413 (Fla. 1st DCA 1991). This duty to business invitees equates to two legal duties: (1) to use reasonable care to maintain the premises in a safe condition, which includes a duty to use reasonable care to learn of the existence of any dangerous conditions on the premises, and (2) to give the invitee warning of concealed perils which are or should be known to the landowner, but are unknown to the invitee and could not be discovered by her through the exercise of due care. *Id.* At the time of the incident, Marshall was a customer in the Wal-Mart store, and thus there is no dispute that Wal-Mart owed Marshall a duty of care. In dispute on the instant motion is whether Wal-Mart breached that duty.

Plaintiff's negligence claim is premised on Wal-Mart's failure to keep its premises free of dangerous conditions, *i.e.*, a clear liquid on the floor that can cause a patron to slip and fall. In relevant part, Florida law dictates when a business establishment may be held liable for a transitory foreign substance on the floor:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
> 
>   (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
> 
>   (b) The condition occurred with regularity and was therefore foreseeable.
> 
> (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Fla. Stat. § 768.0755 (2010).

Florida courts applying this statute have found that proof of actual or constructive knowledge is a necessary element of a slip and fall claim. *See Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 426 (Fla. 4th DCA 2014). *See also Woodman v. Bravo Brio Restaurant Group, Inc.*, No. 6:14–cv–2025-PGB-TBS, 2015 WL 1836941, at *2 (M.D. Fla. Apr. 21, 2015) (interpreting § 768.0755 to effectuate the legislature's intent and finding that proof of actual or constructive knowledge is an element of a slip and fall case, replacing proof by negligent mode of operation); *Valles v. Target Corp.*, No. 14–60723–Civ–Scola, 2015 WL 1640326, at *2 (S.D. Fla. Apr. 9, 2015)

(Essentially, under Florida law, "a person claiming that a store was negligent by not cleaning up a dangerous condition must present some evidence that the dangerous condition . . . existed for such a length of time that, in the exercise of ordinary care, the store would have known of the condition.") (citing *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 726 (11th Cir. 2014) (affirming an order granting summary judgment where the plaintiff failed to establish that the restaurant had actual or constructive notice of a slippery substance on the floor where he fell)). Marshall bears the burden of proof under Florida law. *See* Fla. Stat. § 768.0755(1) ("[T]he injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it.").

Defendant Wal-Mart moves for summary judgment claiming it had no notice of the condition. Specifically, Defendant argues that there is no evidence to show Wal-Mart had actual or constructive knowledge of the clear liquid on the floor of the dairy aisle and Plaintiff cannot establish that the condition existed for a sufficient length of time that it should have known of its existence.

It is undisputed Wal-Mart did not have actual notice. "Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E.*, LP, 787 F. App'x 1007, 1010 (11th Cir. 2019). Plaintiff fails to present any evidence that Wal-Mart had actual knowledge of the water on the floor prior to her fall. Thus, the inquiry turns to constructive notice.

In Florida, "the mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) (citation omitted); *see also Pussinen v. Target Corp.*, 731 F. App'x 936, 937 (11th Cir. 2018). In its motion and at the hearing, Wal-Mart argued that Plaintiff fails to establish that the water on the floor had occurred for a sufficient period of time to support a finding of notice on behalf of Wal-Mart. In support, Wal-Mart contends that the transitory substance was clear, with no tracks from shopping carts. Plaintiff did not see the liquid and she does not know how long the liquid was on the floor. *See Palavicini*, 787 F. App'x at 1013 ("record must contain additional facts to create a permissible inference regarding the amount of time the water had been on the floor"). Indeed, Wal-Mart spends a significant portion of its motion arguing Plaintiff did not see the liquid before slipping on it; she had no knowledge of the liquid's condition before it got to the floor; she does not know how long it had been there; she does not know how it got there; she does not know if Wal-Mart employees were aware of the liquid on the floor; and the liquid was clear without evidence of footprints or shopping cart tracks. Doc. 34 at 10–16. These facts, argued by Wal-Mart, are certainly relevant to demonstrate a lack of evidence to support that the dangerous condition existed for such a length of time that, in the exercise of ordinary care, Wal-Mart should have known of the condition. *See* Fla. Stat. § 768.0755(1)(a).

The issues on the instant motion turn, however, on subsection (1)(b) of Fla. Stat. § 768.0755, which provides that a plaintiff may establish constructive knowledge by circumstantial evidence by showing that "the condition occurred with regularity and

11

was therefore foreseeable." Fla. Stat. § 768.0755(1)(b). On the record before the Court, disputed questions of material fact exist as to whether the condition occurred with such regularity that it should have been foreseeable to Wal-Mart. In a light favorable to Plaintiff as the non-moving party, the statements made by the female employee in the jean jacket to Plaintiff and her sister that the cooler was leaking and that it was broken, coupled with the deposition testimony of Marissa West that the egg cooler was always leaking, create a disputed issue of material fact as to whether the condition existed with such regularity to be foreseeable.

Wal-Mart argues that its employee testified that no work order had been submitted during the relevant time frame regarding repairs to the egg cooler. However, the absence of a work order does not necessarily mean that the cooler was not leaking, but rather it could be that no one reported it, which would be consistent with it "always leaking."

In its motion, Wal-Mart anticipates Plaintiff will seek to rely upon the statements of the woman in the jean jacket who told Plaintiff and her sister that the cooler was leaking. Wal-Mart argues that the Court may not consider the statements about the broken, leaking cooler allegedly made by the woman in the jean jacket, whom Wal-Mart refers to as an "unidentified and supposed Wal-Mart employee," as the statements are hearsay. Plaintiff contends that the statements are not hearsay because they are an opposing party's statement.

Plaintiff argues that the female employee's statements are vicarious admissions. For a statement to be admissible under Federal Rule of Evidence 801(d)(2)(D), the

12

party relying on the statement must show, through evidence independent of the proffered statement, that (1) there existed an employment relationship between the declarant and the party, (2) the statement was made during the agency or employment relationship, and (3) the statement concerned a matter within the declarant's scope of employment. *See U.S. v. Saks*, 964 F.2d 1514, 1524 (5th Cir.1992).

At the hearing, Wal-Mart's counsel did not deny that the woman in the jean jacket on the video was a Wal-Mart employee. Based on the Court's view of the video, it appears obvious the woman is a Wal-Mart employee as she is wearing a Wal-Mart name tag; she is gesturing in a way as if to be giving instructions to other employees; upon seeing the Plaintiff on the ground, she goes to get the assistant manager; she points out to the assistant manager something on the floor; she spends multiple minutes wiping up the floor; and when the assistant manager steps away, she stands near Plaintiff. However, defense counsel contended, at the hearing, that there is no evidence this individual was "on the clock." Be that as it may, it is very apparent by her actions and conduct on the video that she is serving her employer, as she is cleaning up the floor, directing other employees, and assisting the assistant manager, among other things. Considering the evidence in a light favorable to the Plaintiff, the female employee wearing a jean jacket in the video was an employee of Wal-Mart's and her statements were made during her employment relationship. Although not entirely clear, on the record before the Court and considering the evidence in a light favorable to the Plaintiff, it appears, given the employee's actions, that the alleged statements

13

made by the unnamed employee concerned a matter within the scope of her employment.[5]

Wal-Mart relies on the Eleventh Circuit's unpublished opinion in *Palavicini v. Wal-Mart Stores East, L.P.*, 787 F. App'x 1007 (11th Cir. 2019), in which the appellate court affirmed summary judgment in Wal-Mart's favor because an unidentified Wal-Mart employee's statement that an AC unit was leaking did not serve to place Wal-Mart on notice of the condition. *Palavicini* is factually distinguishable because the employee there was truly unknown. Here, the employee is not completely unknown. We see her in the video cleaning the floor and standing near Plaintiff.  We know what she looks like. We know she was at the scene after Plaintiff fell and was there for a sufficient period of time to engage in conversation with Plaintiff and her sister. We can see who she is, but we do not know her name. Neither party has identified the employee by name or presented the Court with a deposition transcript or affidavit from her. But from the video, we can see her Wal-Mart tag, we can see her cleaning up the aisle, and we can see her assisting the assistant manager.

In a light most favorable to the Plaintiff, if the statements about the leaky cooler are admissible, the Plaintiff here, unlike the *Palavicini* plaintiff, has produced sufficient evidence to support a reasonable inference that the condition occurred with sufficient

---

[5] Given Wal-Mart's argument that the statements of the unnamed employee are hearsay, Plaintiff will have the burden at trial of laying a foundation for the admission of the statements as non-hearsay or establishing the applicability of an exception to the rule against hearsay. The Court has considered the statements, pursuant to Rule 56(c)(2), Fed. R. Civ. P, which allows the Court to consider a fact, over objection, that can be presented in a form that would be admissible at trial.

regularity that Wal-Mart had constructive knowledge. As a genuine issue of material fact exists regarding Wal-Mart's constructive knowledge, Wal-Mart is not entitled to judgment in its favor as a matter of law.

Accordingly, it is

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 34) is **DENIED**.

2. This case will be scheduled for trial. Within fourteen (14) days, the parties shall file a joint notice advising the Court of their availability for trial during the months of October through December 2022 and January through March 2023.

**DONE AND ORDERED** in Tampa, Florida on July 12, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any